# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE THE APPLICATION OF MAIRENI CABRAL DONE, | : | |
| | : | |
| Plaintiff / Petitioner, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:18-CV-795-RWS |
| | : | |
| NOEMI ANTONIA MATOS PICHARDO, | : | |
| | : | |
| Defendant / Respondent. | : | |

## ORDER

This case comes before the Court for jurisdictional determination. It was brought pursuant to the Hague Convention on Civil Aspects of International Child Abduction ("Hague Convention"), as implemented by the International Child Abduction Remedies Act, 22 U.S.C. § 9001, *et seq.*, ("ICARA"). Petitioner, a citizen of the Dominican Republic, filed the action on February 22, 2018, seeking to enforce his rights of access to his two minor children who live with Respondent, their mother, in the State of Georgia. The Court held an initial show cause and scheduling hearing on March 8, 2018. Afterwards, Respondent indicated that she intended to challenge the Petitioner's rights of access to the children and responded to the Petition. (Dkt. [12].) The Parties

then filed briefs analyzing various issues raised in this matter, including the scope of the Court's jurisdiction. (Dkt. [13, 14].) After reviewing the record and considering the Parties' arguments in their briefs, the Court concludes that it does not have jurisdiction to proceed with the case, and so it must be dismissed.

**Background**[1]

Petitioner, Maireni Cabral Done, and Respondent, Noemi Antonia Matos Pichardo, had two minor children while living in the Dominican Republic: L.M., who was born in 2006, and J.M., who was born in 2012.[2] (Verified Pet. For Right Of Access Under The Convention On The Civil Aspects Of International Child Abduction ("Verified Pet."), Dkt. [1] ¶¶ 6–8; Resp't Br. Analyzing The Ct.'s Jurisdiction ("Resp't Br."), Dkt. [14] at 1.) Although the Parties never married, Petitioner is listed as the Children's biological father on their birth certificates. (Ex. C, Verified Pet., Dkt. [7].)

---

[1] The following information is taken from the Parties' filings and is included only to add context to this Order. An evidentiary hearing was not held in this matter, and the Court has made no factual findings.

[2] Throughout this Order L.M. and J.M. will be collectively referred to as "the Children."

In 2016, Respondent decided to move to the United States and to take the Children with her. Before they left, on April 29, 2016, the Parties entered into a private agreement regarding custody and visitation. (Verified Pet., Dkt. [1] ¶¶ 9–11.) In it, they agreed that the Children would live with Respondent in the United States, while Petitioner would have visitation rights during summers and Christmas. (See Ex. D, Verified Pet., Dkt. [7-1].) This agreement was never approved by a court in the Dominican Republic. (Resp't Br., Dkt. [14] at 2; Pet'r's Br., Dkt. [13] at 3, 5.)[3]

In May 2016, Respondent and the Children moved to Lawrenceville, Georgia, where they currently reside. (Verified Pet., Dkt. [1] ¶ 12.) According to Petitioner, he has seen the Children only once since they left the Dominican Republic–on Christmas of 2016 when he came to Georgia to visit. Respondent did not send the Children to him during the summer of 2016 or Christmas of 2017. (Id.)

---

[3] There is an issue as to whether this makes the agreement unenforceable under the laws of the Dominican Republic. Respondent has cited ample authority suggesting that it does. (See Resp't Br., Dkt. [14] at 5–6.) Petitioner has not rebutted Respondent's position but has not conceded it either; instead, Petitioner argues that, even if the agreement lacks legal significance, he still has access rights by operation of Dominican Republic law. (See Pet'r's Br., Dkt. [13] at 3–6.)

3

On February 22, 2018, Petitioner filed the present action pursuant to the Hague Convention and ICARA. Petitioner does not object to the Children living with Respondent in Georgia. Instead, he requests, among other things, that the Court enter a final judgment securing his rights of access to the children. (Verified Pet., Dkt. [1] at 5.) Now, the Court must decide whether it has jurisdiction to do so.

**Discussion**

This case requires the Court to determine whether it has jurisdiction to evaluate and make a determination on Petitioner's rights of access to the Children. Though they differ on some points, both Parties agree that the answer is yes. But the Court is not convinced.

The Hague Convention was created with two stated purposes: "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Art. 1, T.I.A.S. No. 11670, S. Treaty Doc. No. 99–11, at 7. After the United States ratified the Hague Convention in 1988, Congress implemented it through ICARA, 22 U.S.C. § 9001, *et seq.* ICARA instructs

courts to "decide the case in accordance with the Convention." § 9003(d).

Typically, cases brought under the Hague Convention involve "a child who was 'wrongfully removed' from his place of habitual residence in violation of a person's *custody rights*," in which case the child "must be returned to that place unless certain 'narrow exceptions' apply." Padilla v. Troxell, 850 F.3d 168, 175 (4th Cir. 2017) (emphasis added). But the Convention also protects a parents' "rights of access"–or, colloquially, their visitation rights. 22 U.S.C. § 9002(7). Specifically, § 9003(b) provides:

> Any person seeking to initiate judicial proceedings under the Convention for the return of a child *or for arrangements for organizing or securing the effective exercise of rights of access to a child* may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed.

22 U.S.C. § 9003(b) (emphasis added).

This case involves an access claim. Petitioner does not seek return of the Children to the Dominican Republic, but rather an order for the Court "securing" his rights of access to them.

Courts are divided on whether ICARA confers jurisdiction upon federal

5

courts to hear access claims. According to the Fourth Circuit, it does not. Cantor v. Cohen, 442. F.3d 196 (4th Cir. 2006). In Cantor, a mother (residing in Israel) brought suit under ICARA for the return of and access to her children who were living with her ex-husband in the United States. Id. at 197–98. The district court dismissed the mother's access claims, ruling that it lacked jurisdiction to hear them. Id. at 198. On appeal, the Fourth Circuit agreed.

The court began, not with § 9003(b), which involves the initiation of judicial proceedings under the Hague Convention, but instead with § 9001–ICARA's implementation provision–which limits courts to determining rights under the Convention. Id. at 199. The court then, turning to the Hague Convention, examined Article 21, which provides that an application for securing the effective exercise of access rights may be presented to the Central Authorities–in the U.S., the Department of State–but makes no mention of bringing such a claim in a judicial proceeding. Id. at 199–200. The court went on to note that "[t]his is in sharp contrast to Article 12 of the Convention, which addresses wrongful removal or return claims, and specifically refers to the initiation of judicial proceedings." Id. at 200.

Furthermore, and most pertinent to this case, the Fourth Circuit found

6

persuasive "the long established precedent that federal courts are courts of limited jurisdiction and generally abstain from hearing child custody matters." Id. at 202. It explained that "[w]ith the exception of the limited matters of international child abduction or wrongful removal claims, which is expressly addressed by the Convention and ICARA, other child custody matters, including access claims, would be better handled by the state courts which have the experience to deal with this specific area of the law." Id. The court found additional support in ICARA's legislative history, which emphasized Congress's desire to avoid having federal courts ensnared by the complexities that accompany child custody determinations. See id. at 202–03. And ultimately, the court refused to interpret ICARA as conferring jurisdiction upon federal courts to decide access claims, thus expressly declining "to move domestic relations litigation to federal courts." Id. at 204–05.

The Second Circuit, by contrast, has held that ICARA *does* create a federal cause of action to secure parents' exercise of their visitation rights. Ozaltin v. Ozaltin, 708 F.3d 355 (2d Cir. 2013). Ozaltin involved a father who sought the return of his children to Turkey from their mother's care in the United States, as well as an order enforcing the visitation rights granted to him

7

by a Turkish family court. Id. at 362. On appeal, the Second Circuit concluded that the district court had jurisdiction under § 9003(b) to consider the father's access claims and that the mother had to comply with the Turkish court's visitation order. In reaching this conclusion, the court criticized the Fourth Circuit's reasoning in Cantor, admonishing that Article 21 states that efforts to secure rights of access "may" be initiated through an application to the Central Authority, not that they "may only" be pursued that way. Id. at 373; see also id. (reading Article 29 to mean that applying to the State Department is a nonexclusive remedy for enforcing access rights). Thus, the Second Circuit concluded, "even though not required under Article 21, federal law in the United States provides an avenue for aggrieved parties to seek judicial relief directly in a federal district court or an appropriate state court." Id. at 374.

Both Parties rely on Ozaltin in their briefs–Respondent for the proposition that ICARA "unambiguously creates a federal right of action to secure the effective exercise of rights of access protected under the Hague Convention," (Resp't Br., Dkt. [14] at 4 (quoting Ozaltin, 708 F.3d at 373)), and Petitioner for resemblances between certain family laws in Turkey and the Domincan Republic, as well as what he considers to be factual similarities

8

between that case and this one.

The Court disagrees with the Parties' reliance on Ozaltin, however. In the Court's opinion, the Second Circuit held, at most, that a right of access is judicially enforceable under the Convention and ICARA and includes, as a general matter, enforcement of visitation orders from foreign courts. In other words, the Second Circuit found that federal courts have jurisdiction to consider and, where appropriate, give effect to orders entered in foreign states regarding a parent's rights of access. And it is there that this case fundamentally differs. Petitioner has no order from a Dominican Republic court granting him parenting time. Instead, Petitioner and Respondent entered into a private agreement regarding custody and visitation that both Parties agree is unenforceable under the laws of the Dominican Republic.[4]

It is because of this that the Court finds the Fourth Circuit's decision in Cantor to be more persuasive. There, much of the court's reasoning focused on the longstanding presumption that federal courts do not and should not engage

---

[4] As mentioned in note 3, *supra*, Petitioner does not directly concede this point. However, he does not appear to suggest that the agreement's terms are enforceable under Dominican Republic law; rather, Petitioner refuses to accept, at least at this point, that the agreement has no legal significance whatsoever.

9

in child custody matters. And here, Petitioner is not simply asking the Court to enforce visitation rights granted to him by a foreign court but to create such rights. As in Cantor, the Court declines to do so.

Yet, the Court need not go so far as to say that it lacks jurisdiction to hear *any* right of access case brought under the Hague Convention as the Fourth Circuit did.[5] Given the unique circumstances of this case, it is sufficient to say that the Court, absent a valid order from a foreign state, lacks jurisdiction to establish, in the first instance, the Parties' respective parental rights.

This conclusion is inescapable given the text of ICARA. Indeed, the statute is emphatically clear that courts do not have authority to determine the merits of any underlying custody dispute. 22 U.S.C. § 9001(b)(4); see also Lops v. Lops, 140 F.3d 936, 936 (11th Cir. 1998); Friedrich v. Friedrich, 983 F.2d 1396, 1400 (6th Cir. 1993). Furthermore,§ 9003(e)(1)(b), which discusses burdens of proof, describes an access case as one "*for arrangements for*

---

[5] The Court notes, however, that the weight of the authorities suggests that there is not jurisdiction, at least absent a "wrongful" removal of the child. See, e.g., Cantor, 442. F.3d 196; Wiggill v. Janicki, 262 F. Supp. 2d 687 (S.D.W. Va. 2003); Teijeiro Fernandez v. Yeager, 121 F. Supp. 2d 1118 (W.D. Mich. 2000); Bromley v. Bromley, 30 F. Supp. 2d 857 (E.D. Pa. 1998); Janzik v. Schand, No. 99 C 6515, 2000 WL 1745203 (N.D. Ill. Nov. 27, 2000). But the Court also acknowledges that these decisions predate the Second Circuit's ruling in Ozaltin.

10

*organizing or securing* the effective exercise of rights of access[.]" (emphasis added). In other words, the Court is not to organize rights of access, but merely arrange for their organization. The Court's role, then, would "not [be] to establish or enforce custody rights, but only to provide for a reasoned determination of where jurisdiction over a custody dispute is properly placed." Barzilay v. Barzilay, 600 F.3d 912, 916–17 (8th Cir. 2010) (internal quotations and citations omitted). That is not what the Petitioner is seeking. And because the Court cannot "secure" Petitioner's rights of access to the Children, (see Verified Pet., Dkt. [1] at 4–6), the Court concludes that there is no cause of action under the Hague Convention and ICARA. As a result, the Petition must be dismissed for lack of jurisdiction. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting Ex parte McCardle, 74 U.S. 506 (1868))).

The Court notes that its finding does not leave Petitioner without recourse, however. The Hague Convention does not preclude Petitioner from filing a claim for visitation rights in state superior court under Georgia's

11

AO 72A
(Rev.8/82)

visitation statute–a venue, the Court adds, uniquely qualified to make such determinations. In addition, Petitioner may file a petition with the Central Authority pursuant to the Convention to aid in his request to visit with the Children.

## Conclusion

As described above, the Court lacks jurisdiction to proceed with this case. It is, therefore, **DISMISSED, without prejudice**, so that the Parties may proceed in an appropriate venue.

**SO ORDERED**, this 24th day of April, 2018.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)